UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH PERKINS,

       Plaintiff,

v.

CLAYTON TOWNSHIP, a governmental
entity and ROD SHUMAKER,

       Defendants.

_____/

Case No. 2:08-cv-14033

HONORABLE STEPHEN J. MURPHY, III

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D/E 7)

       This is a suit brought by Beth Perkins, the former Treasurer of Clayton Township, against Clayton Township and against Rod Shumaker, the former Supervisor of Clayton Township.  In her complaint, Perkins alleges that the defendants violated the Michigan Whistleblower Protection Act and violated her First Amendment rights.   Specifically, Ms. Perkins alleges that in retaliation for speaking to a newspaper reporter about alleged improprieties by the Township Clerk, the defendants 1) sued Perkins for a Writ of Mandamus alleging, in part, that Perkins had violated the Michigan Freedom of Information Act by providing information to newspaper reporters, 2) filed a motion for contempt following the Michigan court's partial grant of the mandamus petition, and 3) scheduled, but never held, a public censure hearing on Perkins' conduct.

       Defendants now move for summary judgment on four grounds:  first, they argue that Perkins' § 1983 claims against Clayton Township fail as a matter of law because Perkins has not alleged any official custom or policy that caused a deprivation of her rights; second, they argue that Perkins cannot establish a *prima facie* case of retaliatory conduct in violation of her First Amendment rights; third, that Perkins' claims against Shumaker fail on

the basis of qualified immunity; and fourth, Perkins' Whistleblower Protection Act claims fail because she is not a Township employee and her reports to the media were not reports to a public body.  For the reasons stated below, the Court will grant defendants' summary judgment motion.

## FACTS

Beth Perkins served as the Treasurer of Clayton Charter Township, an elective position, from 2000 to 2008.  Defendant Rod Shumaker was the Supervisor of the Township from 1996 to 2008.

In 2004, Perkins discovered that family members of the Township's elected Clerk, Sally Lurvey, were receiving discounted rates through a Township cell phone plan.  Perkins went to Shumaker with this information and was told he would take care of it.  In 2007, however, Perkins discovered that Lurvey's family members still had discounted cell phone plans that they received through the Township.  She also raised concerns that Lurvey's son had a contract for cleaning the Township offices and for maintaining Township computers, along with sundry other issues.

Perkins went to Shumaker again and the Township auditors and, in November 2007, to a reporter for the Swartz Creek Journal, raising the issues of Lurvey's conflicts of interest.  Perkins also possibly permitted the reporter to view invoices on her Township computer.  An article was published in the Swartz Creek Journal, dated November 11, 2007, that quotes Perkins speaking out on the various Lurvey issues.

At the November 8, 2007 meeting of the Township Board of Trustees, the Trustees voted unanimously to hold a censure hearing on Perkins, the hearing to be held on November 29, 2007.  Although the motion was made by Trustee Glenn Huffman and seconded by Trustee Greg Childers, it appears that Shumaker was the moving force behind

2

the motion, and that the motion was based upon Perkins' interview with the Swartz Creek Journal and the fact that Perkins permitted the reporter to view Township invoices on her computer.  Shumaker claimed that Perkins' conduct in permitting the reporter to view Township invoices constituted a violation of the Township's FOIA policy, which designated Shumaker as the Township's FOIA coordinator and required all FOIA requests to be made in writing.  Perkins initially voted with the rest of the board to hold the censure hearing, but in later board meetings took the reverse position.  The censure hearing was rescheduled once or twice, but was ultimately never held.

Prior to the initial date set for the censure hearing, Shumaker sent a packet to each board member, including Perkins, containing information that Shumaker assembled supporting his claim that Perkins violated the Township FOIA policies.  Perkins' packet was delivered by a uniformed police officer.  The packet contained a warning that the documents were confidential for board members and were not to be shared with spouses, other family members, friends or consultants.

Sometime in the same time period, Shumaker met with the Township auditors and discovered what he determined to be problems with Perkins' performance of the responsibilities of Treasurer.  These problems included failure to enter tax receipts into the Township computer system, so that it appeared that the police fund was running a large deficit.  On the advise of Steven Iamarino, who acted as counsel for the Township, Shumaker filed a complaint for mandamus against Perkins on December 27, 2007. Although Perkins characterizes the mandamus complaint as based solely on the FOIA allegations, the mandamus complaint actually raises six separate claims against Perkins, only one of which involve the FOIA allegations.  The mandamus complaint alleges that Perkins:

3

1.  failed to pay bills and expenditures voted upon and approved by the board;

2.  failed to collect delinquent personal property taxes;

3.  failed to adequately proofread property tax bills that directed Clayton Township residents to pay their taxes to another municipality;

4.  disclosed Township records to newspaper reporters in violation of the provisions of the Freedom of Information Act;

5.  conducted banking transactions without the knowledge of other board members and without the board's permission; and

6.  caused or permitted persons working under her to remove a check from the Township premises for "obviously personally motivated reasons.[1]

The mandamus action was assigned to Judge Geoffrey Neithercut. Judge Neithercut held a two-day evidentiary hearing on the mandamus petition (which the plaintiff in this action characterizes as "mind-numbing") and, on February 7, 2008, issued an opinion on the mandamus petition. In his opinion, Judge Neithercut found for the Township on the first, second and fourth points of the mandamus petition and issued a mandamus requiring Perkins to follow the Township policies on entering payments into the Township computer rather than into her personal computer and to collect delinquent taxes. Judge Neithercut found insufficient evidence, however, to support the Township's allegations that Perkins had changed the Township's account signature cards at the Township bank, that she refused to sign checks paying the Clerk for a school board election in violation of a Township resolution or that she was harassing other township employees. Finally, as to

---

[1]This last issue appears to be based on a check that the Township approved to pay Lurvey for overtime worked during the previous election. Perkins believed that paying the elected Clerk for overtime was improper, but the board overruled her and voted to pay Lurvey overtime. When the unsigned check was sent to Perkins' office, Perkins was on vacation. Perkins' deputy clerk, Lloyd Swan, tried to reach Perkins about the check but was unable to do so and, rather than signing it, he took it home. Shumaker called Swan and required him to bring the check back to the Township offices; the check was then paid to Lurvey.

the FOIA allegation, the judge found that the Township's interpretation of the Michigan Freedom of Information Act was incorrect, and that the FOIA imposed burdens on the Township to disclose information to the public but did not forbid Perkins to voluntarily provide information to the public in her capacity as Treasurer.

Both sides immediately claimed victory. The Township appealed those parts of Judge Neithercut's order that found in Perkins favor and subsequently filed a motion for contempt, arguing that Perkins had failed to comply with Judge Neithercut's order. Perkins wrote a memo on Clayton Township letterhead directed to Clayton Township board members saying that she had won the mandamus proceeding, that Lurvey had acted improperly and that Shumaker had failed to check the Clerk's conduct and had retaliated against Perkins in violation of her First Amendment rights. Shumaker responded with his own memorandum to the board members that said that Perkins was in a "state of 'denial' and her statement that Judge Neithercut had ruled in her favor was "fantasy." Perkins cites this memorandum in further support of her retaliation argument.

Perkins left on medical leave in February 2008, around the time the mandamus opinion was issued, and after that point never returned to her job as Treasurer. She also stopped attending board meetings at that time. During this time period the Township sent her paychecks to her home by certified mail, return receipt requested, which she alleges was retaliatory because she had to make sure someone was home to receive the paycheck when it was mailed. According to her deposition testimony, Perkins was at this point not performing her job as Treasurer, and instead was staying home and walking her dog or chauffeuring her children, but stated that she was available to answer questions for the deputy treasurer who appeared to be doing the Treasurer's job. She applied for disability

benefits but was rejected by the insurance carrier on the grounds that she was not precluded from performing work that was not related to Clayton Township.

Perkins initially ran for reelection for the Treasurer position, but withdrew her candidacy shortly before the primary in August 2008.  She was not reelected in November 2008.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir.1992).

## ANALYSIS

Perkins claims that in retaliation for her actions in reporting the Clerk to the newspapers, Shumaker and the Township:

- called for and voted for a censure hearing for her during a board meeting in November 2007.  These actions occurred during an official meeting of the board.  Perkins herself voted in favor of the censure hearing initially, but then reversed herself.  The hearing was never held.

- Filed a petition for a writ of mandamus, asserting that Perkins was failing to perform her duties as Treasurer.  The petition included among its various claims an assertion that Perkins erred by providing information to newspaper reporters

in an alleged violation of the Township's FOIA policy.  The petition was granted in part, to the extent that the state court judge ordered Perkins to enter information in the public computers and to collect delinquent taxes.

-   Filed a motion for contempt of court, arguing that Perkins had failed to comply with the mandamus order.  It is unclear whether the motion for contempt was granted or denied.

Perkins claims that these actions constitute retaliation in violation of her First Amendment rights and also violate the Michigan Whistleblower Protection Act.

Perkins also claims that the defendants retaliated against her in other ways, such as posting a police officer at a board meeting; having a uniformed police officer deliver a proposed censure agenda to her home; having what she terms a "stooge attorney" attend a board meeting in an attempt to intimidate her; having locks changed on the vault and having her escorted on township property.  Perkins has failed, however, to come forward with evidence that the defendants had a police officer posted at the board meeting or that she was aware of such an officer, that the defendants had a "stooge attorney" attend board meetings in attempts to intimidate her, or that the defendants had her escorted on township property, so these allegations will not be considered in determining this motion for summary judgment.  There is evidence that locks were changed on the vault, but Shumaker testified that this was done because the lock was "jimmied" and Perkins has failed to offer evidence that connects this change to any retaliation or that she was in any way inconvenienced by it, so this allegation will also be disregarded.

I.    <u>Perkins' Section 1983 Claims Against Clayton Township Fail to Allege a Policy</u>

Defendants argue that Perkins' Section 1983 claims against the Township should be dismissed because Perkins' amended complaint only alleges retaliatory conduct by Rod Shumaker, the Supervisor of the Township, and there is no basis for finding liability for the township based on Shumaker's actions.  There is no *respondeat superior* liability under 42 U.S.C. § 1983.  *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996).  To hold the Township liable under Section 1983, a plaintiff must prove that an official custom or policy caused the violation of her constitutional rights.

The plaintiff argues that liability may be imposed on the municipality under *Pembaur v. Cincinnati*, 475 U.S. 469 (1986).  In *Pembaur*, the Supreme Court held that a municipality may be liable for a decision to adopt a particular course of action by its properly authorized decision-makers.  The Court emphasized that municipal liability "attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur*, 475 U.S. at 481.  Whether an official has such policymaking authority is a question of state law.  In addition to proving conduct directly attributable to the municipality, "[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Commissioners v. Brown*, 520 U.S. 397, 404 (1997) (emphasis original).  As the *Brown* decision makes clear, a township can only be liable under Section 1983 for its own acts that caused the deprivation of the plaintiff's federal rights that are taken with the requisite degree of culpability.  *Brown*, 520 U.S. at 404.   Innocent policies

8

that are subsequently misused by individuals that do not enjoy policy-making authority do not create municipal liability.

As a charter township, the legislative authority and power of the township is vested in an elected seven-member township board. *See* Michigan Charter Township Act, MCL § 42.1 *et seq.* The members of this board under Michigan law include the town supervisor, the township clerk, the township treasurer and four trustees. MCL § 42.5. At the time of the conduct in question, the Clayton Charter Township board consisted of plaintiff Beth Perkins, defendant Shumaker, Township Clerk Sally Lurvey, and four elected trustees. As the Township acts through the board, the Township is liable for resolutions passed by the board if those resolutions resulted in a constitutional deprivation to the plaintiff.

The plaintiff cites three "policies" of the Township that she claims create municipal liability here: the Township's FOIA policy, the Township's conduct policy and the "censure policy." The policies themselves cannot be considered to be retaliatory, because each policy was passed by the board prior to Perkins' interview with the press. The FOIA policy was instituted in February 2007, and the censure policy was instituted in 1997. It is unclear when the township conduct policy was instituted, but there is no evidence in the record that it was passed anytime after Perkins went to the press about Lurvey's alleged improprieties. What plaintiff seems to be claiming instead is that the Township retaliated against her by passing a resolution authorizing the mandamus suit against her, which suit was based in part on her alleged violation of the FOIA policy. This resolution is clearly an official action on the part of the Township Board within its authority and would therefore constitute a policy for purposes of Section 1983 liability.

As for the "censure" policy, it is a bit unclear what the plaintiff is asserting. The policy providing for a censure hearing was instituted, according to Shumaker's unrefuted

testimony, in 1997, ten years prior to the events at issue, so again the policy itself cannot be retaliatory.  Instead, plaintiff appears to be asserting that the retaliatory act was that of the board in voting to hold the censure hearing and rescheduling and finally cancelling the censure hearing.  These acts were done by the board at regularly scheduled board meetings by a majority of the board members and would constitute a policy for purposes of Section 1983 liability.

As to the Township "conduct" policy, it is not clear when or whether that policy was passed by the board, but assuming it was in existence prior to Perkins' actions in going to the press, the policy itself cannot be considered to be retaliatory.  Plaintiff does not in fact seem to assert that the policy is objectionable, but rather asserts that the Township is liable because defendant Shumaker "attempted to use" the conduct policy against the plaintiff.  This is an attempt to impose vicarious liability on the Township.  The acts of Shumaker in citing the conduct policy in support of his censure motion cannot be imputed to the Township.

Thus, the only policies alleged that implicate the Township are the actions of the township at regularly scheduled board meetings in scheduling, rescheduling and finally cancelling the censure hearing, and in passing resolutions to pursue the mandamus action and to file the contempt motion.  These are policies of the Township, but, as discussed below, cannot be the basis for imposition of First Amendment liability because they did not result in an adverse action sufficient to state a claim for First Amendment retaliation.

II.   Plaintiff's Evidence Fails as a Matter of Law to Establish
      a Case of First Amendment Retaliation Against the Defendants

The defendants argue that summary judgment should be entered on Perkins' Section 1983 claims because Perkins cannot show the elements required to state a claim for retaliation in violation of the First Amendment.  The Court agrees.

In order for a public employee to succeed in a claim of retaliation in violation of the First Amendment, the plaintiff must show the following:

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Leary v. Daeschner*  228 F.3d 729, 737 (6th Cir. 2000) (*quoting Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (other citations omitted)).  If the plaintiff succeeds in stating this *prima facie* case, the burden shifts to the defendant to show by a preponderance of the evidence that it would have taken the same action even in the absence of the protected conduct.  *Id.*

A. *Garcetti v. Ceballos* does not require dismissal

In challenging the first element, that the plaintiff was engaged in a constitutionally protected activity, the defendants rely on the case of *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  *Garcetti* held that where a public employee speaks pursuant to his or her official duties, the speech is not protected because any restriction by the employer on the speech "simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 422.  The defendants assert that *Garcetti* applies here because Perkins was the Treasurer at the time of her interview and her speech to the reporter was part of her duties as Treasurer.

11

The Court concludes that *Garcetti* does not apply here because the speech at issue, Perkins' interview with the Swartz Creek Journal reporter, was not within the scope of her employment and therefore was not outside the scope of the protections of the First Amendment.  While the subject matter of the speech concerned matters within the purview of the treasurer's responsibilities, there is nothing in the job description of treasurer that indicates that providing information to newspaper reporters is part of the job. These facts contrast with those in *Garcetti,* where the alleged protected speech was a memorandum written by the plaintiff to his superiors recommending dismissal of a case on the basis of alleged government misconduct.  The Supreme Court held that in *Garcetti* that in writing the memorandum, the plaintiff was fulfilling a responsibility to advise his superior about how to proceed with a pending case and therefore was not, as a matter of law, engaging in speech as a citizen.  In contrast, here, the speech was to a newspaper reporter.  The defendants' position at the time was that Perkins should not have given the interview at all, not that the interview as was a task of the Treasurer's job.  Perkins' conduct in giving the interview is more similar to the actions of a teacher in writing a letter to a local newspaper, *Pickering v. Board of Ed.*, 391 U.S. 563 (1968) or discussing politics with a co-worker, *Rankin v. McPherson*, 483 U.S. 378 (1987), than the writing of the memorandum at issue in *Garcetti*.  *Garcetti,* therefore, does not provide a basis for granting summary judgment to the defendants here.

B.   Perkins does not provide evidence of an "adverse action"

Although the Court finds that *Garcetti* does not provide grounds for the grant of summary judgment to the defendants here, summary judgment is nonetheless appropriate because Perkins has failed to come forward with sufficient evidence of the second amendment of a First Amendment retaliation claim, that she suffered an "adverse action"

12

at the hands of either the Township or Shumaker.  Because Perkins has failed to provide any evidence of an adverse action, summary judgment will be entered.

The case of *Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999) is almost completely on point with the present case, and requires this Court to grant the defendants' motion for summary judgment on the grounds that the plaintiff here has failed to allege a cognizable adverse action.  In *Mattox*, plaintiff Brenda Mattox was a member of the City Council of Forest Park from her election in November 1991 until her resignation following electoral defeat in November 1993.  *Mattox*, 183 F.3d at 517.  In 1992, several firefighters raised concerns with Mattox about the fire department.  *Id.*  Mattox relayed their concerns to the rest of the city council and to City Manager Hodges.  *Id.* at 518.  Hodges directed the compilation of a preliminary report and, upon its completion, the city council directed a more thorough final report, 690 pages in length, that was released on October 12, 1993.  *Id.*  Mattox alleged that the comments and allegations contained in the report were designed to punish her for initiating the investigation of the fire department.  *Id.*  The district court denied summary judgment on the grounds of qualified immunity to the defendants on Mattox's Section 1983 retaliation claim and defendants filed an interlocutory appeal.  *Id.*

The Sixth Circuit reversed the district court's denial of summary judgment on qualified immunity as to Mattox on the grounds that Mattox failed to allege sufficient adverse action. *Mattox*, 183 F.3d at 522.  The Sixth Circuit noted that First Amendment retaliation cases in the public employment context generally involve serious adverse actions such as firing, dismissal, transfer, discharge or suspension, while Mattox alleged nothing of the kind.  *Id.* at 521.  Rather, Mattox's allegations were that the publication of the report affected "'the characters and reputations of Plaintiffs, holding them up to ridicule, contempt, shame and disgrace,' making them 'the objects of reproach, intentionally degrading Plaintiffs and

13

abridging their respectabilities, comforts, and positions in society,' and crushing "the political position and esteem possessed by Plaintiff Brenda Mattox, Plaintiff Mattox losing the November 1993 city council election and her seat on that council."'  *Mattox*, 183 F.3d at 521 (quoting complaint).  The Sixth Circuit held that these allegations failed to establish as a matter of law sufficient adverse action to state a First Amendment retaliation claim.  *Id.* at 524.  The Court noted that the video and report contain many references to Mattox, most of them unfavorable, and portrayed her as acting outside the scope of her proper role as a member of council by improperly interjecting herself into the ongoing investigations.  *Id.* at 522.  The Court found, however, that even if it were to assume that the report was a deliberate attempt to discredit Mattox in retaliation for her actions in investigating the fire department, it still would not constitute adverse action.  In reaching this conclusion, the Court focused in particular on Mattox's position as a city councilperson:

> As an elected public official, Mattox voluntarily placed herself open to criticism of her actions and views on political matters.  A deliberate attempt to discredit Mattox, especially if initiated in retaliation for her actions in investigating the fire department, is perhaps an inappropriate and unfortunate occurrence, but on the facts of this case, it is not the type of "adverse action" against which the First Amendment protects.  It is not equivalent to being fired by a government employer for expressing protected views.  We do not think it would deter a public official of ordinary firmness from exercising his or her right to speak under the First Amendment.  Public officials may need to have thicker skin than the ordinary citizen when it comes to attacks on their views.  Mattox has not pleaded sufficient injury to make out a claim for First Amendment retaliation.

*Mattox*, 183 F.3d at 522.  Applying *Mattox*, the Court holds that the alleged retaliatory conduct of the defendants here are not sufficient to deter a public official of ordinary firmness from exercising her right to speak under the First Amendment, and therefore dismissal of Perkins' retaliation claim is appropriate.

Plaintiff attempts to distinguish *Mattox* on the grounds that "in Mattox the Complaint only alleges emotional damages at best" while Perkins is alleging economic

harm including constructive discharge and attorneys fees.  Plaintiff's characterization of *Mattox* is incorrect, however, because the plaintiff in *Mattox* alleged that she lost reelection as a result of the report at issue, which obviously included economic harm. Plaintiff also attempt to distinguish *Mattox* by arguing that there were no false accusations in *Mattox.*  This is not a distinction because there appear to be no false accusations here, either.  Instead, the plaintiff alleges that the defendants correctly accused her of providing information to a reporter but incorrectly concluded and stated that this action violated the Township's FOIA policy.

The plaintiff argues that the Court should look to *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999) (en banc) in determining whether Perkins sufficiently states an adverse action.  She argues that in *Thaddeus-X* the serving of cold food and a transfer, or even a petty snub such as the cancelling of a birthday party would be sufficient to constitute an adverse action.  This is an incorrect characterization of the holding of the Court in *Thaddeus-X*, a suit by a prisoner alleging interference with access to the courts.  *Thaddeus-X* involved a prisoner, wholly within the power of prison authorities, who alleged harassment, physical threats and transfer to the area of the prison used to house mentally disturbed inmates, where prisoners threw human waste and urine at each other and at guards, flood the gallery with waster and bang their footlockers so loudly that sleep was impossible.  *Thaddeus-X*, 175 F.3d at 398.  The second plaintiff, Bell, alleged that defendants refused to provide him with pens or papers for writing legal papers and refused to permit him to communicate with another prisoner who was assisting him in his legal research, and only brought him cold food, which they said would continue until he dropped a lawsuit against the warden.  *Id.* at 384.  As to Bell's claims, the Sixth Circuit did not find that his allegations sufficed to state a claim of

adverse action, but only that the district court had failed to evaluate this claim under the correct standard, which was whether the alleged conduct would suffice to deter a person of ordinary firmness from exercising his First Amendment rights. *Id.* at 398-99[2]. The Court of Appeals remanded the case to the district court to determine whether is constituted conduct sufficient to dissuade a person of ordinary firmness from exercising his constitutional rights. *Id. Thaddeus-X,* thus, does not hold that denial of a birthday party would constitute a constitutional tort, but rather holds that the correct standard in evaluating an alleged adverse action is whether the alleged conduct would deter a person of ordinary firmness from exercising his first amendment rights. *Id.* at 396-97. The Court also noted that the application of this standard differs based on the context in which it arises, and "[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens before an action taken against them is considered adverse." *Id.* at 398. Because *Thaddeus-X* deals with First Amendment claims by a prisoner, rather than an elected official, it is not on point the way that *Mattox* is. *Mattox* applies the correct *Thaddeus-X* standard and specifically addresses the question of when a "public official of ordinary firmness" would be deterred from exercising her First Amendment rights.[3] *Mattox*, 183 F.3d at 521. The Court concludes that, under *Mattox*, Perkins has failed to establish an adverse action

---

[2]The adoption of this standard, from *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) commanded a majority of the *en banc* court.

[3]There is also a question (which neither party has raised) of what impact Shumaker's own First Amendment rights have on liability here. See *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005) (in analyzing adverse action alleged by criminal defense attorney against prosecutor for alleged defamation, the court must be careful to take into account only those comment that could reasonably be construed as defamatory, "lest we trample on the First Amendment rights that [the defendant] retains as a government official.")

16

and therefore the defendants are entitled to summary judgment on Perkins' First Amendment retaliation claim.

    C.  <u>No causal connection</u>

The defendants argue that the plaintiff has failed to provide evidence of a causal connection between Perkins' exercise of her first amendment rights and the alleged adverse actions. The Court does not reach this issue because summary judgment is appropriate for Perkins' failure to allege an adverse action as discussed above.

    D.  <u>Can the suit for mandamus be considered retaliatory?</u>

The defendants argue that the suit for mandamus and the board hearings cannot constitute the basis for a first amendment retaliation claim because (1) mandamus is the traditional remedy for compelling performance of the mandatory legal duties of public officials, (2) a motion to enforce the mandamus order cannot be considered retaliatory because it is the traditional remedy for failure of a public official to do her duty, and (3) the proper suit here is not a section 1983 claim but a suit for malicious prosecution, which Perkins could not bring because she should not show the elements, including special injury. The Court does need to reach these arguments because, as discussed above, Perkins cannot state a sufficient adverse action.

    E.  <u>Can the defendants' conduct at Board Meeting be considered retaliatory</u>?

Defendants argue that the threatened censure hearing cannot be retaliatory because (1) it never took place, (2) hearings open to all parties in a public forum cannot be said to abridge the plaintiff's first amendment rights, and (3) the acts of the board members at the board meetings are covered by the absolute privilege for legislative officials. This third point is a good one, because the Supreme Court has held that local legislators are absolutely immune from suit under Section 1983 for all actions taken tin

17

the sphere of legitimate legislative activity.  *Bogan v. Scott-Harris*, 523 U.S. 44 (1998).

The plaintiff's argument in response, that Shumaker was acting in an administrative or

ministerial capacity, is irrelevant to those claims based on his conduct at the board

meetings, which would appear to fall within the immunity stated in *Bogan v. Scott-*

*Harris*.  *See Bogan*, 523 U.S. at 55 (actions of city council members in introducing

budget, voting for ordinance and signing in into law quintessentially legislative).

Ministerial duties, on the other hand, are those in which the defendants officials lack

discretion.  *Bogan*, 523 U.S. at 51.  This is a complex point, and the defendants appear

to have the better argument, but, again, the Court does not reach this issue because

dismissal is appropriate on the grounds that Perkins does not allege a sufficient adverse

action.

III.    Are the Section 1983 Claims against defendant
        Shumaker barred by the doctrine of qualified immunity?

        Defendants argue that any claims against Shumaker are barred by the doctrine of

qualified immunity.  Qualified immunity applies to shield government officials from

liability where their conduct does not violate clearly established rights.  *Harlow v.*

*Fitzgerald*, 457 U.S. at 818.  The analysis in this circuit follows a "tripartite" procedure:

First, the court should determine whether a constitutional violation occurred; second,

the court must determine whether the right violated was a clearly established right of

which a reasonable person would have know; and third, whether the plaintiff has alleged

sufficient facts to indicate that what the official did was objectively unreasonable in light

of the clearly established constitutional rights.  *Moldowan v. City of Warren*, 578 F3d

351, 375 (6th Cir. 2009) (citing *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)).

The first step of the analysis is dispositive here.  Shumaker is entitled to qualified

immunity because, as discussed above, the plaintiff suffered no adverse action, and therefore no constitutional violation occurred.

Perkins argues that Shumaker is not entitled to qualified immunity because, she argues, Shumaker explicitly said that he was acting in his personal capacity and his capacity as a citizen of Clayton Township in bringing the mandamus suit.   This argument is not persuasive.   Section 1983 claims only lie against persons who are acting under color of law.   Perkins' argument that Shumaker cannot avail himself of qualified immunity because he was acting in a personal capacity cannot be reconciled with her assertions that he was acting under color of state law.   To the extent that Perkins states a Section 1983 claim against Shumaker she is asserting that he is acting under color of his office and Shumaker is entitled to assert qualified immunity as a defense.

IV.   Do Plaintiff's Whistleblower Protection Act claims fail because
      Perkins is not an employee and her reports were not to a public body?

Defendants argue that Perkins cannot state a claim under the Michigan Whistleblower Protection Act, MCL 15.361 *et seq.* ("WPA") because, defendants argue, Perkins was an elected official at the time of the incident, not an employee of the Township, and because her reports of malfeasance were to a newspaper reporter, not a public body.

The WPA provides a cause of action for employees that allege discrimination based upon reports or planned reports to public bodies.   In order to establish a prima facie claim under the WPA, an employee must show that (1) she was engaged in protected activity as defined by the WPA; (2) she was discharged or otherwise discriminated against, and (3) a causal connection exists between the protected activity and the discrimination.   *Shallal v. Catholic Social Services*. 455 Mich. 604,  610 (1997).

A.  Was Perkins an "Employee" for purposes of the WPA?

The WPA applies to "employees" which are defined for purposes of the act as "a person who performs a service for wages or other remuneration under a contract of hire, written or oral, express or implied. Employee includes a person employed by the state or a political subdivision of the state except state classified civil service."  MCL 15.361(a).   Michigan applies the "economic reality test" in determining whether a person is an employee of a particular defendant.  *Chilingirian v. City of Frazer*, 194 Mich. App. 65, 69 (1992), *aff'd upon remand*, 200 Mich. App. 198 (1993).   The economic reality test looks to the totality of the circumstances surrounding the work performed.  *Chilingirian,* 194 Mich. App. at 69.  Relevant factors include (1) control of a worker's duties; (2) payment of wages; (3) right to hire, fire and discipline; and (4) the performance of duties as an integral part of the employer's business toward the accomplishment of a common goal.  *Id.*

Summary judgment is appropriate because Perkins was not an employee of the Township or of Shumaker at the time at issue in this suit.  The undisputed facts show that Perkins was not "a person who performs a service for wages or other remuneration under a contract for hire, written or oral, express or implied" but rather was the elected Treasurer of Clayton Charter Township who was elected by the voters and performed the duties of treasurer as outlined in the law; she was not an employee, either of the Township or of Shumaker.

Perkins argues that nothing in the WPA requires the defendant to be plaintiff's employer in order to be an "employer" under the act. (citing *Chilingirian v. Frasier*, 200 Mich. App. 198 (1993) (on remand)).  The *Chilingirian* case on remand does not support Perkins assertion, holding only that an attorney is not an employee of the City of Detroit

20

for purposes of the WPA when he works for a law firm that bills the city for services rendered. *Chilingirian*, 200 Mich. App. at 200-201.   More importantly, however, the *Chilingirian* case is irrelevant because, whatever the status of the defendant, a plaintiff must be an "employee" within the meaning of the statute in order for the statute to apply.   Because Perkins was not an employee at the time the alleged retaliation occurred she cannot bring an action under the WPA.

B.  Were Perkins' Reports to a Public Body

A "public body" is defined generally to include state and local agencies, but does not include newspapers.  The defendant argue that Perkins' complaint alleges that she was discriminated against because she reported Lurvey's conflicts of interest to a newspaper reporter.  Because the newspaper does not constitute a "public body", defendants argue that Perkins cannot state a claim under the WPA.

Perkins argues in response that she also reported Lurvey's malfeasance to the board itself, and the board is a public body and therefore she falls within the acts coverage.   There is no need for a report to be to an outside agency to fall within the WPA protections. *Brown v. Mayor of Detroit*, 478 Mich. 589, 595 (2007) (internal reports to employer fall within protection of WPA).  Perkins' argument here requires an overly-expansive reading of her complaint in this action, which appears to allege that the defendants retaliated against Perkins for her communications with the reporter for the Swartz Creek Journal, not for her reports to the auditors or the Township board.  The Court would be inclined to grant the plaintiff leave to amend her complaint to explicitly allege retaliation for Perkins' reports to the board if summary judgment were not appropriate regardless of this issue due to the fact that Perkins was not an employee of the Township or Shumaker at the time of the events in question.  Because the Court

21

finds that Perkins does not fall within the protection of the act because she was not an employee, it will not grant Perkins leave to amend to clarify the complaint in line with the allegations in her response because any such amendment would be futile.

### ORDER

Wherefore it is **ORDERED** that defendants' motion for summary judgment is **GRANTED**. Perkins complaint is **DISMISSED WITH PREJUDICE**.

.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 23, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 23, 2009, by electronic and/or ordinary mail.

Alissa Greer
Case Manager